whose convenience would be served by the stopping of trains. From May 1st to August last there were but four applications for tickets from Saratoga Springs to this station. The only travel to this station of a substantial character which ever will arise, if at all, will take place during the summer months only, and then only to carry passengers in the main from Saratoga Springs to the property of the plaintiff, for the purpose of enjoying the benefit of the white sulphur spring located there; but that such travel will ever become substantial is still unproven and problematical.

Under these circumstances it seems to me that it would be a gross injustice to compel this railroad daily to stop each and every of its numerous trains to and from Saratoga throughout the entire winter season, when there is no travel at all, and throughout the summer season when the travel is but light, and to compel it to stop such trains at all such times, whether tickets are bought for the station, or the train is flagged, or otherwise. So far as all passengers from Saratoga to the Springs are concerned, the purchase of a ticket will insure the stoppage of the train; so far as passengers from the station are concerned, it is surely not a burden for them to show the signal provided to stop the desired train. The contract and the decree made for the benefit and the convenience of travelers, and not for the advertising of the plaintiff's springs by frequent stops, when there are no passengers to alight or to embark, at the expense of the comfort of the traveling public. Construed, therefore, in the light of the contract controlling the action of the parties, and the facts and circumstances of the case it seems to me to be very clear that it was intended by the decree in question by the provision in relation to the stopping of all regular trains to provide for such stopping when the same was necessary for the convenience of embarking and disembarking passengers whose wishes became known to those in charge of the trains by the tickets they held or the signal they displayed.

For these reasons, the motion is denied, with costs.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

William D. McNulty, of New York City, for appellant.
Jarvis P. O'Brien, of Troy, for respondent.

PER CURIAM. Order affirmed, without costs, on the opinion of Mr. Justice HENRY T. KELLOGG at Special Term. All concur, except KELLOGG and HOWARD, JJ., who dissent.

────────

SOUTHEE v. BINGHAMTON RY. CO.

(Supreme Court, Appellate Division, Third Department. May 28, 1915.)

1. STREET RAILROADS ☞85—INJURIES—STREET RAILWAY RIGHTS.
    A street car has no paramount right in the street, even between blocks where the sides are filled with standing wagons, and a driver would have to stop or drive on the tracks.
    [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 193, 195; Dec. Dig. ☞85.]

2. STREET RAILROADS ☞118—INJURY TO PERSONS ON TRACKS—ACTIONS—INSTRUCTIONS.
    In an action for personal injuries received when his wagon was run down by a street car, an instruction that between blocks the street car had the right of way was properly refused, where there was evidence tending to show that the sides of the street were blocked, and that plain-

tiff, to proceed, had to drive on the tracks; it being the duty of the defendant, if desiring such instruction, to qualify it to the facts.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 258–269; Dec. Dig. ☞118.]

Smith, P. J., dissenting.

Appeal from Trial Term, Broome County.

Action by Benjamin Southee against the Binghamton Railway Company. From a judgment for plaintiff, and order denying a new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Curtiss, Keenan & Tuthill, of Binghamton (Thomas J. Keenan, of Binghamton, of counsel), for appellant.

Hinman, Howard & Kattell, of Binghamton (Thomas B. Kattell, of Binghamton, of counsel), for respondent.

PER CURIAM. The only question involved upon this appeal is whether the court erred in its refusal to charge the jury that at the point of accident the defendant had the paramount right of way. The collision out of which this accident arose occurred on Chenango street, which is one of the most traveled streets of the city of Binghamton, about 6 o'clock on the afternoon of April 1, 1914. The one-horse express wagon in which the plaintiff was seated, and of which he was in charge, or a projecting trunk thereon, was struck by one of the defendant's trolley cars approaching from the rear, and the plaintiff was thrown to the pavement, breaking both bones of his left forearm, and inflicting other injuries of a less serious nature.

As the plaintiff turned from Court street, which runs east and west, northerly into Chenango street, which runs practically north and south, a north-bound trolley car of the defendant stood in Chenango street at the northerly crossing of Court street, receiving passengers, about six or eight of whom stood upon the pavement, awaiting an opportunity to enter the car. The plaintiff had proceeded up Chenango street at a slow trot, from 126 to 160 feet, when the car overtook him and the collision occurred. The space between the easterly curb of Chenango street and the westerly rail of defendant's easterly or north-bound track was about 13 feet, standing within which space were four or five horse-drawn vehicles and one automobile, all of which, with the exception of the most northerly vehicle, stood alongside the curb, allowing but little more than sufficient space for the plaintiff to drive in safety between the vehicles and the track. The northerly vehicle, which was a one-horse delivery wagon, stood at an angle to the curb, the rear of the wagon extending so near the track as to leave insufficient space for the plaintiff's wagon to pass around it without the left-hand wheels of plaintiff's wagon running within the space between the rails. The plaintiff claims that while he was thus driving at a slow trot, and necessarily passing around the rear of this vehicle, and had so far passed it that for the first time he was able to turn towards the curb, defendant's

car, which the plaintiff had passed standing at the Court street crossing, and which was traveling from 10 to 16 miles per hour, struck the left hind wheel of plaintiff's wagon, and the plaintiff was thrown from the cart and injured. The defendant, however, claims that when the collision occurred, the street car was going at the rate of 4 or 5 miles per hour, and that plaintiff's wagon had passed around the rear of the standing vehicle, and the plaintiff was driving parallel to defendant's track, but so close to the track that the grabiron on the front of the body of the car struck a trunk which the plaintiff had carelessly allowed to project some inches over the edge of his wagon box, throwing the trunk against the plaintiff, forcing him from the wagon.

The testimony of the motorman indicates that he saw the plaintiff as the plaintiff drove along ahead of the car, and as he turned westerly to pass around the wagon, and that the motorman sounded the gong as the car moved along. The testimony of the plaintiff is that he heard no warning whatever as the car came up behind him. However, it is not necessary that the evidence be stated at length, but it is sufficient to say that it amply warranted the submission to the jury of the questions of negligence and contributory negligence.

[1] At the close of the charge, defendant's counsel made the following request:

"I ask the court to charge the jury that at the point of accident the defendant had the paramount right of way.

"The Court: I will leave that question to the jury, in connection with the fact in evidence that the side of the road was then being occupied by standing vehicles. I do not understand that, if between the side of the road and the track the road is occupied, the driver has not an equal right of the track with the street car; in other words, if the driver did occupy the track, and standing vehicles occupied the roadway on his right, he could not go to the left in opposition to the traffic and he could not go up in the air.

"Defendant's Counsel: I except to the refusal of the court to charge as requested and to the charge as made.

"Defendant's Counsel: I ask the court to charge that, if the jury find both defendant and plaintiff negligent, the plaintiff cannot recover.

"The Court: That is so; if both were negligent, the plaintiff cannot recover."

In the case of Moore v. Rochester Railway Co., 204 N. Y. 312, 97 N. E. 714, 49 L. R. A. (N. S.) 505, the court, in discussing the subject of paramount right of way of a street car, said:

"The rule governing the subject at street crossings differs from the rule that applies between blocks, and each rests on its own peculiar reason. Between blocks there is no traffic across the street. While people sometimes walk across and occasionally drive across from driveways leading to their dwellings, walking across is unnecessary, and driving across is infrequent. Hence the law gives the street cars the paramount right of way between blocks, although it is to be exercised in a reasonable and prudent manner. On the other hand, at street crossings traffic is necessary and continuous. Vehicles must cross the street, and hence must cross the tracks, or they cannot use the highways provided for travel. This necessity takes from the cars at street crossings the paramount right they enjoy between blocks, and places them on an equality with vehicles. At such points, as Judge Earl announced, 'neither has a right superior to the other,' for the reason that 'the vehicle has the right to cross and must cross the railroad track.'"

The court then said that where a street runs into, but not across, the street occupied by the tracks—

"the necessity created by law in the one case is as imperative as that created by the physical situation in the other, and owing to such necessity the rule should be the same as at street crossings proper."

From these statements it appears that the necessity of the situation is the vital factor in determining the existence of a paramount right. Driving upon street car tracks between street crossings in congested districts, as was that where this collision occurred, is neither unnecessary nor infrequent. In the case at bar, the necessity of the situation compelled the plaintiff to drive upon the track in passing around the wagon. The street car had no exclusive right of way, and the plaintiff was not as matter of law required to stop when he reached the obstructing vehicle and wait until the street car had passed. That he was exercising his right to so pass upon the track in a reasonable and prudent manner, and with due regard to any rights of the street car, is supported by his testimony, and that of several of his witnesses, to the effect that he had driven on a trot and passed nearly around the wagon before the car reached him. The plaintiff could not pass across the defendant's north and south bound tracks to the west side of the street in the face of the southerly traffic and in violation of law. In order to proceed, necessity as much compelled him to drive upon defendant's track as though he had been driving along an intersecting street at its crossing of defendant's tracks.

It has been held, in many cases where the necessities of the occasion demanded the temporary obstruction of the track of a street railroad by a vehicle, that there was during such period no paramount right of way of the street car over the vehicle. Black v. Staten Island Elec. R. R. Co., 40 App. Div. 238, 240, 57 N. Y. Supp. 1112; Frank v. Metropolitan Street R. Co., 91 App. Div. 485, 86 N. Y. Supp. 1018; Dietrich v. Brooklyn Heights R. R. Co., 123 App. Div. 604, 108 N. Y. Supp. 158.

[2] The jury had the right to find from the evidence that the motorman saw the plaintiff as he drove alongside the track, and then onto the track in passing around the obstructing vehicle, and that, notwithstanding that fact, the motorman drove his car at a speed of from 10 to 15 miles per hour, and not in a reasonable and prudent manner, and without due regard to the rights of the plaintiff, thereby causing the collision. In view of such facts, the instruction to the jury requested by the defendant would have been immaterial and inapplicable, and have tended to mislead and confuse the jury. The request as made was not in any manner qualified. Unquestionably a request to charge must not require the court to assume matter of fact on which the jury are to pass, and must be in such form that it can be charged without qualification. The charge in chief fully and correctly informed the jury as to the relative rights of the parties and was not excepted to by the defendant. No reversible error was committed by the refusal of the court to charge as requested. It is not claimed that the damages were excessive.

The judgment and order should be affirmed, with costs to the respondent. All concur, except

SMITH, P. J. (dissenting). I think the court should have charged at the defendant's request that the defendant had at the point of the accident the paramount right of way. The plaintiff with his express wagon was preceding the defendant's car, at all times, however, between the rail and the curb, until at the point in question, where a delivery wagon stood at an angle to the curb and forced the plaintiff to go further toward the track, if not actually upon the track, in order to pass by. The plaintiff's claim is that the car struck the left rear wheel of his wagon. The defendant's claim is that the car did not strike the wagon, but struck a trunk which was leaning over the edge of the wagon, which, if true, would indicate that the wagon was not upon the track, but was some distance from the track toward the curb, at the time of the collision. That a street car has the paramount right of way upon a highway between crossings is not questioned. The motorman might assume that the plaintiff had knowledge of this right, and would so drive as to avoid collision. This the jury had the right to know in determining whether the motorman upon the street car was guilty of negligence in assuming that he might pass the plaintiff without striking him; and the defendant had the right to have the jury so instructed.